E-FILED
Monday, 25 July, 2005 03:28:23 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| CHARLENE SESSIONS, ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. 04-2074 |
| TOMMY THOMPSON, Secretary of ) | |
| Health and Human Services and ) | |
| JAMES F. MARTIN, Regional Director, ) | |
| ) | |
| Defendants. ) | |

# REPORT AND RECOMMENDATION

In November 2003, an Administrative Law Judge (hereinafter "ALJ") denied disability insurance benefits (hereinafter "DIB") and supplemental security income payments (hereinafter "SSI") to Plaintiff, Charleen Sessions, under Title II of the Social Security Act (42 U.S.C. §§ 416(I), 423). The ALJ found that, although Plaintiff had not engaged in substantial gainful activity since 1998 and had a combination of impairments of qualifying severity, these medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1, Reg. 4. In addition, the ALJ found that Plaintiff could perform a significant number of jobs in the economy.

In April 2004, Plaintiff filed a Complaint (#1) seeking judicial review of the Social Security Administration's final decision. In December 2004, Plaintiff filed a Claim of Error (#6), and in March 2005, Defendant filed a Motion for an Order which Affirms the Secretary's Decision (#9). After reviewing the administrative record and the parties' memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Claim of Error **(#6)** be **GRANTED** and that Defendant's Motion for an Order which Affirms the Secretary's Decision **(#9)** be **DENIED**.

## I. Background

Plaintiff was born on February 19, 1958, and resides alone in Kankakee, Illinois. (R. 72, 250.) She has an eighth grade education and has previously worked as a fast food worker, machine operator, housekeeper, landscaper, and kitchen helper. (R. 250, 276-77.) Plaintiff testified that she has not engaged in substantial gainful activity since November 1998 because of multiple impairments including a chronic ulcer in her right eye, Graves disease, thyroid problems, hearing problems, depression, numbness and tingling in the hands, legs, arms, and lower back, swelling in the legs and hands, and headaches. (R. 16, 250.)

Plaintiff first applied for DIB and SSI in September 1999. (R. 31.) In January 2000, an ALJ denied these claims, and Plaintiff submitted a request for reconsideration. (R. 31.) In February 2001, the ALJ held a hearing, and Plaintiff, a medical expert, and a vocational expert appeared and testified. (R. 31.) In his March 26, 2001, decision, ALJ John Kraybill found that Plaintiff was not entitled to a period of disability, DIB, or SSI under 20 C.F.R. §§ 216i, 223, 1602, and 1614(a)(3)(A) because: (1) her medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1, Reg. 4; (2) her allegations were not totally credible; and (3) Plaintiff had the residual functional capacity for a restricted range of light work. (R. 37-38.)

In October 2001, Plaintiff submitted new applications for DIB and SSI. (R. 72-73.) Her applications were initially denied in April 2002 and upon reconsideration, and Plaintiff timely requested a hearing. (R. 13.) During the September 2003 hearing, ALJ Richard Boyle considered medical records from a state examiner, records from Plaintiff's personal physicians, and testimony from Plaintiff and a vocational expert. (R. 17.)

In December 2001, Dr. Sarat Yalamanchili examined Plaintiff and reported that Plaintiff experienced visual loss, low back pain, hypertension, depression, history of hearing impairment, and hypothyroidism. (R. 101-03.) In July 2002, Dr. James Graham, a physician, assessed Plaintiff and opined that she had no exertional limitations, no postural limitations, and no

manipulative limitations. (R. 123-130.) Dr. Graham found that she was visually limited with blindness in her right eye and 20/70 vision in her left eye. (R. 126.)

Plaintiff's personal medical records reveal that Plaintiff had her thyroid removed in July 2001. (R. 84-89.) Her treating endocrinologist, Dr. Maureen Morgan O'Connor, reported in September 2002 that Plaintiff had not been compliant with the necessary follow-ups or medication, which may have had an adverse effect on her health. (R. 173.)

Plaintiff also offered medical records from two visits with her primary care physician, Dr. Vijay Haryani. Dr. Haryani initially saw Plaintiff on September 26, 2002, during hospitalization when Plaintiff went to the emergency room with complaints of heartburn, retrosternal chest pain, shortness of breath, and tingling and numbness in both hands. (R. 134-35.) At the time, Plaintiff was taking Synthroid, calcium carbonate, and Inderal, but had not been compliant with her medications and had not taken Synthroid in two weeks. (R. 134-35.) Dr. Haryani noted that Plaintiff did not appear to be in acute pain, and her chest pain could be from gastroesophageal reflux disease or possible angina. (R. 134.) He also recorded a history of Grave's disease, chronic nicotine additiction, and dyspnea, which probably resulted from chronic smoking. (R. 134-34.) Dr. Haryani instructed Plaintiff to resume her medications and conducted several medical tests. (R. 134-35.) In a follow-up appointment on October 8, 2002, Dr. Haryani indicated that Plaintiff's coronary artery disease was stable and that she had hyperlipidemia, GERD, and hypothyroidism. (R. 133.) Dr. Haryani also suspected that Plaintiff had coronary artery disease and noted that Plaintiff was "unable to work due to dyspnea [and] angina." (R. 133.)

The records do not include any reference to a follow-up examination with Dr. Haryani after October 2002. Based on his physical examinations of Plaintiff in September and October of 2002, Dr. Haryani, stated in a September 2003 letter that Plaintiff could not work due to coronary artery disease, hypertension, hyperlidemia, hypothyroidism, frequent angina, and lower extremity edema. (R. 184.) In his September 2003 letter, Dr. Haryani also recommended that Plaintiff undergo coronary angiogram. (R. 184.)

Plaintiff also complains of depression, but is receiving no treatment. (R. 106-08, 273-74.) Plaintiff independently takes care of her personal needs, visits with friends, and occasionally attends church, and a State Agency reviewer concluded that her psychological condition was not severe. (R. 106-08, 121-22.) Plaintiff testified that she has recurring headaches and reported that she went to the hospital in 2003 for a headache that lasted for several days, but Plaintiff is not currently taking medication or undergoing treatment for her headaches. (R. 257-59.)

During the September 2003 administrative hearing, vocational expert GleeAnn Kehr considered a hypothetical individual of the same age, education, and work experience as Plaintiff who possessed residual functional capacity for light work and was limited to jobs that required no binocular vision, no work with small objects, and no work at unprotected heights or with dangerous moving machinery. (R. 278-79.) Ms. Kehr testified that these restrictions would eliminate the individual's ability to work in some, but not all, of Plaintiff's previous occupations. (R. 278.) Ms. Kehr noted that such an individual could work as a fast food worker, ticket taker, or housekeeper. (R. 279.)

Ms. Kehr was unable to determine if a hypothetical individual who possessed the same limitations as the aforementioned individual could work in any jobs if the individual could only perform sedentary work and had vision impairments that left her blind in one eye and with 20/70 vision in the other eye. Ms. Kehr concluded that such an individual would be precluded from all work if her visual impairments prevented her from reading large-faced types, such as words on a menu board. When she considered the same individual in jobs that required light work, Ms. Kehr stated the individual could only work as a housekeeper because fast food workers and ticket sellers need to be able to recognize buttons and read small portions of text. Thus, the hypothetical individual who could not read would be precluded from all sedentary work but may be able to work as a housekeeper if she possessed the residual functional capacity for light work.

Following the hearing, ALJ Boyle determined that Plaintiff was not under a disability as defined by the Social Security Act. 20 C.F.R. §§ 404.1520(e) and 416.920(b). ALJ Boyle

concluded that (1) Plaintiff has an impairment or a combination of impairments considered "severe" based on 20 C.F.R. §§ 404.1520(b) and 416.920(b) including blindness of the right eye, a history of thyroid problems, coronary artery disease, hypertension, and gastroesophageal reflux disease; (2) these impairments do not meet or medically equal the impairments listed in 20 C.F.R. § 404, Subpt. P, App. 1, Reg. 4; (3) Plaintiff's allegations of subjective symptoms and functional limitations are not totally credible; (4) Plaintiff has the residual functional capacity to preform light work; and Plaintiff could work in a significant number of jobs available in the regional economy.  (R. 19-20.)  As a result, the ALJ concluded that Plaintiff was not disabled for the purposes of the Social Security Act.

In April 2004, Plaintiff filed a Complaint (#1) seeking review of the final administrative decision.  In December 2004, Plaintiff filed a Claim of Error (#6), and in March 2005, Defendant filed a Motion for an Order which Affirms the Secretary's Decision (#9).

## II.  Standard of Review

In reviewing an ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's finding with the Court's own assessment of the evidence.  *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989).  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  Thus, the question before the Court is not whether Plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings.  *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).  The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  In other words, so long as, in light of all the evidence, reasonable minds could differ

concerning whether Plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits.  *Brooks v. Chater*, 91 F.3d 972, 977–78 (7th Cir. 1996).

The Court gives considerable deference to the ALJ's credibility determinations and will not overturn them unless the plaintiff can show that those findings are patently wrong.  *Urban v.*

*Sullivan*, 799 F. Supp. 908, 911 (C.D. Ill. 1992); *Kelley v. Sullivan*, 890 F.2d 961, 965 (7th Cir. 1989).  However, when credibility determinations rest on objective factors or fundamental implausibilities rather than subjective considerations, reviewing courts have more freedom to review the ALJ's credibility determination.  *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

### III.  Analysis

Plaintiff argues that this Court should find that the ALJ erred by denying her DIB and SSI for the following reasons:  (1) her primary care physician, Dr. Haryani, provided sufficient medical evidence to warrant the conclusion that she is unable to work, and (2) the Commissioner erred by denying Plaintiff benefits because she has a severe and remediable impairment but cannot afford necessary medical treatment.

### A.  The ALJ's Decision

In determining whether a claimant is disabled within the meaning of the Social Security Act, the ALJ must proceed through a five-step analysis.  20 C.F.R. § 416.920(a)-(f).  The Secretary must determine in sequence:  (1) whether the claimant is currently employed (or was during the relevant period); (2) whether she had a severe impairment; (3) whether the impairment met or equaled one listed by the Secretary; (4) whether the plaintiff could have performed her past work; and (5) whether the claimant was capable of performing any work in the national economy.  *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).  Once the claimant has satisfied the first two steps, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment, but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job.  *Pope v. Shalala*, 998 F.2d 473, 477-78 (7th Cir. 1993).

In this case, the ALJ determined that Plaintiff was not engaged in substantial gainful activity, had a severe impairment, and could not perform her past occupations, thus Plaintiff satisfied steps one, two, and four of the test.  (R. 19-20.)  However, Plaintiff failed to satisfy step three of the test because her disability did not meet a listed impairment in Appendix I.  (R. 19.) In addition, based on the testimony of the vocational expert, the ALJ held that Plaintiff did not

satisfy step five of the test because she could perform a variety of other jobs entailing light work, considering her age, experience, and limitations. (R. 19-20.) Thus, the ALJ found that Plaintiff was not disabled according to the Social Security Act, and so was not eligible for DIB or SSI. (R. 20.)

### B. Discussion

First, Plaintiff contends that Dr. Haryani's records prove that she should qualify for DIB and SSI. Plaintiff relies on a conclusion made by Dr. Haryani in a letter dated September 12, 2003, that she is "not considered able to work" due to coronary artery disease, hypertension, hyperlidemia, hypothyroidism, frequent angina, and lower extremity edema. (R. 184.) The ALJ acknowledged Dr. Haryani's opinion but compared his conclusion with the medical records from the two evaluations in the fall of 2002 and found Plaintiff's argument unpersuasive. (R. 17-18.) The ALJ pointed to the lack of records from the past year and determined that Plaintiff's subjective complaints were insufficient to form the basis of a medical opinion. (R. 17-18.)

While Dr. Haryani's conclusion deserves some weight, it was not accompanied by follow-up examinations or a full assessment of Plaintiff's functional limitations. The Seventh Circuit has determined that the "ALJ need not give controlling weight to a treating physician's opinion if it is not supported by objective clinical findings." *Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999); *see* 20 C.F.R. § 404.1527(d). Dr. Haryani conducted only one examination and one follow-up examination of Plaintiff a year before reaching the conclusion. The Seventh Circuit has noted that "[i]t would be exceedingly illogical to credit a doctor's opinion because he is more likely to have a detailed or longitudinal view of the claimant's impairments when in fact, there is no detail or longitudinal view." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004).

Plaintiff also contends that her heart condition has been progressively deteriorating, and that the progressive nature of her condition supports Dr. Haryani's conclusion that she is unable to work. The medical evidence currently before the Court does not substantiate a finding that

Plaintiff's heart condition is getting progressively worse. If Plaintiff's condition has become worse since the ALJ's decision, she may file a new application for benefits.

Plaintiff also argues that she is entitled to DIB and SSI because the Commissioner may not deny benefits to a claimant if the claimant has a severe impairment that would be remediable, but the claimant cannot afford necessary medical treatment. A regulation provides that in some circumstances, a failure to follow prescribed treatment would not require a finding of nondisability. 20 C.F.R. § 1530. Some courts have found that a patient's inability to pay for medicine may be a "good reason" for the patient's failure to comply with a medical treatment plan and may not constitute noncompliance under 20 C.F.R. § 1530. *See Norris v. Apfel*, No. 99-6167, 2000 WL 504882, at *8 (10th Cir. Apr. 28, 2000); *Meroki v. Halter*, No. 00-C--2696, 2001 WL 668951, at *10 (N.D. Ill. June 14, 2001) ("The Commissioner may not deny benefits to a claimant if a condition that would be a severe impairment is remediable, but the claimant cannot afford the necessary medical treatment.") However, this regulation does not apply when an individual is not otherwise disabled. "[A] person who otherwise meets the disability criteria cannot be denied benefits for failing to obtain treatment that he or she cannot afford." *Meroki*, No. 00-C-2696, 2001 WL 668951, at *10 (N.D. Ill. June 14, 2001). In this case, the regulation does not apply in this case because the ALJ found that Plaintiff did not otherwise meet the disability criteria. (R. 19-20.) Thus, Plaintiff is not entitled to DIB or SSI on the basis that she could not afford treatment.

Additionally, the ALJ determined that Plaintiff's allegations were not fully credible. The Seventh Circuit has stated that "credibility determinations are due special deference." *Rice v. Barnhart,* 384 F.3d 363, 371 (7th Cir. 2004). In assessing credibility, the ALJ must look at both the medical evidence and the nonmedical evidence. 20 C.F.R. § 404.1529(c). Here, the medical evidence does not support Plaintiff's complaints of severe headaches and an inability to walk around and perform basic physical movements. (R. 18, 270.) Without medical records to support such claims, Plaintiff's subjective complaints of depression and other impairments do

8

not support a finding of disability.  "[A] discrepancy between the degree of pain claimed by the applicant and that suggested by medical records is probative of exaggeration."  *Sienkiewicz v. Barnhart,* No. 04-1542, 2005 WL 1274279, at *5 (7th Cir. May 31, 2005).  Moreover, Defendant notes that Plaintiff's testimony contradicts previous examinations and statements.  Plaintiff's description of her daily routine in her testimony does not align with statements she made in March 2002 during a psychological evaluation.  (R. 106, 264-67.)  The determination of credibility is normally considered a factual matter, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990), and the ALJ's credibility finding is entitled to deference.  *Scheck*, 357 F.3d at 703.  Here, the record does not support a conclusion that the ALJ's credibility determination was patently wrong.  Accordingly, this Court defers to the ALJ's determination that Plaintiff's claims are not fully credible.

The ALJ concluded that Plaintiff was unable to perform her past work and then determined that Plaintiff had the RFC to perform light work with some limitations.   Based on that conclusion, the ALJ determined that Plaintiff could perform a number of jobs available in the regional economy.  However, this conclusion does not adequately address the evidence regarding Plaintiff's visual impairments.  In his decision, the ALJ acknowledged Plaintiff's visual impairments (R. 17), but did not explain how he reached the conclusion that these impairments would not prevent her from working.  The vocational expert testified in general regarding how limitations on a person's ability to read and see would affect the availability of jobs a person could perform, but stated she did not know how Plaintiff's particular visual impairments would affect her ability to read (R.  281).  Therefore, her testimony does not support the ALJ's conclusion regarding Plaintiff's ability to perform a number of jobs available in the regional economy.

After reviewing the records and the parties' memoranda, this Court concludes that substantial evidence does not support the ALJ's decision regarding whether Plaintiff is capable of performing any work based on a residual functional capacity for light work combined with her

well-documented visual impairments.  Therefore, the Court recommends reversing the ALJ's decision and remanding the case to the Social Security Administration to assess whether the combination of Plaintiff's visual and other impairments constitute a disability within the meaning of the Social Security Act.

### IV.  Summary

For the reasons set forth above, this Court recommends that Plaintiff's Claim of Error **(#6)** be **GRANTED,** Defendant's Motion for an Order which Affirms the Commissioner's Decision **(#9)** be **DENIED**, and the case be remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence 4, for further proceedings consistent with this recommendation. Remand pursuant to 42 U.S.C. § 405(g), sentence 4, would terminate the case. *Schalala v. Schaefer*, 509 U.S. 292, 299 (1993) (a sentence-four remand order terminates the case).

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten (10) working days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 25th day of July, 2005.

                                              s/ DAVID G. BERNTHAL
                                              U.S. MAGISTRATE JUDGE